# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 30, 2010

No. 09-11040

Lyle W. Cayce
Clerk

BONN OPERATING COMPANY

Plaintiff- Appellant

v.

DEVON ENERGY PRODUCTION COMPANY, L.P.

Defendant -Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, DAVIS and BENAVIDES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Bonn Operating Company ("Bonn") appeals the district court's grant of summary judgment in favor of Devon Operating Company ("Devon") on issues arising out of the joint operating agreement governing their relationship. The plain language of the agreement and the undisputed facts do not support Bonn's challenges to that judgment. Accordingly, we affirm.

I.

Bonn Operating Company ("Bonn") and Devon Energy Production Company ("Devon") are co-working interest owners in oil and gas leases in Wyoming. Under a Form 610 Model Form Operating Agreement-1956 executed

by the parties' predecessors-in-interest ("JOA"), Devon is the operator of the leases and Bonn is a non-operating working interest owner.

Under the terms of the operating agreement, if a party desires to drill a well it "may give the other party written notice of the proposed operation" with specified information. Upon receipt of notice, the other parties to the JOA have 30 days to elect whether they will participate in the operation. Declining to participate or failing to make an election causes a party to be a non-consenting party. Consenting parties bear the cost and risk of drilling. Non-consenting parties avoid those risks, but are subject to a penalty. Under the penalty provision, consenting parties are entitled to the non-consenting party's share of any production from the well until their proceeds equal the cost of 100% of the non-consenting party's share of certain costs (such as the cost to operate the well) and 300% of other costs (such as the cost to drill and complete the well before it becomes operational and producing).

Although the JOA provision regarding operations is written in terms of sending notice of *proposed* operations, Devon sent Bonn notice by letter dated February 12, 2003, that the Marquis Federal 15W-12 well had been drilled and completed. Bonn was aware that the completion was successful, but elected not to participate by notifying Devon in writing on the ballot that it "elect[ed] to go non-consent on this well." The cost of the well was $135,139.38, of which Bonn's share was 50% or $67,569.69. The non-consent penalty charged to Bonn was $105,491.33.

Bonn filed suit against Devon in October 2006 alleging breach of contract and contending that Devon improperly charged it with non-consent penalties related to the Marquis Federal well. Bonn also contends that Devon failed to timely ballot Bonn regarding the Marquis Federal 15W-12 well and that Devon failed to pay interest on sums due to it pursuant to a Wyoming statute.

No. 09-11040

Bonn and Devon filed competing motions for summary judgment on the breach of contract claim. In its orders on these motions, the district court made rulings concerning the appropriate choice of law and concluded that Devon did not breach the JOA by failing to give notice prior to the time the well was drilled and completed. It also found that Bonn waived any claims related to late balloting by Devon. Finally, the district court held that Devon did not improperly charge penalties to Bonn.

The parties subsequently executed a Settlement Agreement and Mutual Release, by which they released each other from the remaining claims in the lawsuit not resolved by the court's orders on the motions for summary judgment. The parties filed a joint motion to dismiss those claims and Bonn timely appealed the court's orders.

II.

Bonn argues first that Devon improperly charged contractual penalties related to costs incurred before drilling and after completion of the well, contrary to the terms of the JOA. Devon acknowledged charging Bonn's interest in various wells with penalties both prior to spudding and subsequent to the release of the drilling and completion rig, but argues that those charges are proper under the terms of the JOA. Although the parties disagree as to whether the charges were proper, both agree that the JOA and the attached Accounting Procedures in Exhibit C govern the issue.

Paragraph 12 of the JOA details the non-consent penalty. It states that the non-consenting party is deemed to have relinquished its interest in the well "[u]pon commencement of operations for the drilling, reworking, deepening or plugging back of any such well" until such time as payout. Case law is clear that "commencement of operations" for the drilling of a well occurs before the well is spudded.

3

No. 09-11040

> Various activities preliminary to actual drilling have been held to represent commencement of operations. To mark commencement of operations, actual drilling is unnecessary. See *Petersen v. Robinson Oil & Gas Co.*, 356 S.W.2d 217, 220 (Tex. Civ. App.-Houston 1962, no writ).

*Dorsett v. Valence Operating Co.*, 111 S.W.3d 224, 230 (Tex. App. 2003), reversed on other grounds in *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005). *Dorsett* specifically rejected the suggestion that operations are not commenced until the well is spudded. *Id.*

Payout is defined in the JOA as the time when the proceeds from the well equal 100% of the non-consenting party's share of certain costs and 300% of the non-consenting party's share of drilling costs. Payout is thus determined by the accounting records for the well. It is not tied to any operational milestone, like completion. Accordingly Devon states that it properly charged Bonn for penalties from the date it commenced operations on the well until payout. We agree.

Bonn argues that the proper time period for accumulation of penalty costs is from the date the well is spudded (the drill bit pierces the surface of the earth) until completion (or commencement of production). Bonn bases its argument on a misreading of the Accounting Procedures in Exhibit C to the JOA. Section III of the Exhibit deals with the application of Indirect Charges or overhead to particular wells. Paragraph III.2. allows Devon to charge overhead to a well at a fixed monthly rate per well. The drilling overhead rate, which varies depending on the depth of the well, applies during the drilling of the well. A different rate applies during production. Paragraph III.4., the provision relied on by Bonn, states when the different rates apply. The drilling overhead rate "shall begin on the date each well is spudded and terminate on the date the drilling or completion rig is released." However, this time limitation applies only

4

No. 09-11040

to indirect charges for overhead.  It does not limit Devon's ability to charge non-consenting parties for all direct costs, and associated penalties, applicable to a well pursuant to the terms of Paragraph 12 of the JOA.  Bonn's argument is without merit.

### III.

In addition to alleging that Devon charged costs to its account for an improper period, Bonn argued that no penalties should be owed at all because of improper balloting for the Marquis Federal well.  Devon drilled and completed the Marquis Federal well prior to sending notice of operations or intent to drill to Bonn.  Bonn responded to the notice by stating in writing "we elect to go non-consent on this well."  Bonn argues that because notice was sent after the well was drilled it was improper and the JOA penalty provisions do not apply.  The district court found that Devon did not breach the JOA by balloting Bonn after the well was drilled, that Bonn was not damaged as a result of the late ballot, that the non-consent penalties applied because Bonn elected to go non-consent, and that Bonn is estopped from claiming that the expenses incurred on the well before the ballot are not properly chargeable.  We agree.

Section 12 of the JOA does clearly speak in terms of *proposed* operations indicating that the notice should be sent prior to operations being commenced.

> any party or parties wishing to drill, rework, deepen or plug back such a well may give the other party written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation.  The party receiving such notice shall have thirty (30) days . . . within which to notify the party wishing to do the work whether they elect to participate in the cost of the proposed operation.

5

No. 09-11040

However, the Texas Supreme Court has held that this language in a JOA does not forbid the operator from commencing work before the end of the 30-day notice period.

In *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005), the operator sent notice of a proposed operation but commenced drilling before the 30-day period to elect to participate expired. The non-operator argued that this failure constituted a breach of contract and therefore prevented enforcement of the non-consent penalty. The operator, Valence, argued that the operator can commence work on the proposed operation during the notice period or even before the 30-day notice period begins. The Texas Supreme Court agreed with Valence that the JOA "places no temporal limitation on Valence's ability to commence work on proposed projects." After citing the provision that is substantially similar to the one in this case, the Texas Supreme Court stated -

> This plain language in the Agreement describes Dorsett's right to receive notice of proposed operations and to elect to participate in those operations. It places no restrictions on when Valence may commence drilling or preparations for drilling.
>
> . . . .
>
> In short, the thirty-day notice period sets a deadline for Dorsett to decide whether to participate in proposed operations. Nothing in the language of the Agreement forbids the operator from commencing work before the end of the notice period.

*Id.* at 662-663.

Unlike in *Dorsett*, in this case that operations were essentially completed before Devon sent the notice of operations to Bonn. However, that fact actually works in favor of Bonn. It had the opportunity to decide its participation in the well after the majority of the risk associated with drilling had been determined. Bonn knew that the well was completed and successfully producing. As stated

6

in *Valence*, early commencement does not harm the non-operators. It simply places greater risk on the operator that the cost of the operation will fall entirely on him. *Id*. at 663. In addition, Aaron Cawley, Bonn's managing partner, acknowledged that the JOA contains no provision requiring balloting prior to drilling and also stated that Bonn suffered no damage as a result of Devon's operations before balloting Bonn.

With full knowledge of the costs of the well and its successful completion, Bonn elected to go non-consent. Cawley acknowledged that this election was clearly pursuant to the terms of the JOA. These facts establish waiver. "Under Texas law, the elements of waiver are (1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; and (3) actual intent to relinquish that right." *GP Plastics Corp. v. Interboro Packaging Corp.*, 108 Fed. Appx. 832, 836 (5th Cir. 2004). The district court did not err in concluding that Bonn waived any rights, if any exist, related to Devon's late balloting.

## IV.

The final issue Bonn raises in this case relates to the appropriate choice of law for determining the interest rate to apply to the payment of proceeds. The district court analyzed choice of law and determined that Oklahoma law supplies the interest rate. This rate only applies if any damages are assessed. Because of our disposition of the issues above, there are no damages on which to calculate interest and this issue is moot.

## V.

For the foregoing reasons, we affirm the judgment of the district court. AFFIRMED.